JAMES H. HOLL, III. CA Bar No. 177885
TIMOTHY J. MULREANY, *pro hac vice pending*
DANIELLE KARST, *pro hac vice pending*
Attorneys for Plaintiff
COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000
jholl@cftc.gov
tmulreany@cftc.gov
dkarst@cftc.gov

# THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No. 2:18-cv-03991 |
| Plaintiff, | |
| v. | **COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS** |
| JIN CHOI, APURO HOLDINGS LTD. d/b/a APUROFX, and JCI HOLDINGS USA d/b/a JCI TRADING GROUP, LLC | |
| Defendants. | |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), alleges as follows:

## I.    SUMMARY

1.    From at least January 2014 and continuing through the present (the "Relevant Period"), Jin Choi ("Choi"), individually and as agent and principal of Apuro Holdings, Ltd. ("AHL") d/b/a ApuroFX (together, "Apuro") and JCI Holdings USA ("JCI Holdings") d/b/a JCI Trading Group, LLC ("JCI Trading Group," and together with JCI Holdings, "JCI") (Choi, together with Apuro and JCI, "Defendants"), has fraudulently solicited at least $350,600 from six individuals ("clients") for the purported purpose of trading off-exchange leveraged or margined retail foreign currency exchange ("forex") contracts on their behalf.

2.    Choi created and operates a number of business entities that he uses to perpetuate his fraud, including Apuro and JCI.

3.    Defendants solicited and continue to solicit clients and prospective clients through investor seminars in the United States and abroad, social media services such as Instagram and Facebook, and various websites operated by Choi, including, without limitation, *www.apuroforex.com* and *www.jcitrading.com*.

4.    Defendants fraudulently solicited and continue to solicit clients and prospective clients by making material misrepresentations and omissions of material facts regarding Choi's trading experience and track record, among other things, and by promising 20%-50% annual returns.

5.      During the Relevant Period, Defendants misappropriated all of the at least $350,600 solicited and accepted from clients and used clients' funds to support Choi's lavish lifestyle and to return approximately $24,000 to certain clients as withdrawals of principal or as purported "profits" in the manner of a Ponzi scheme. Defendants did not conduct any forex trading on behalf of these clients.

6.      By this conduct, and the conduct further described herein, Defendants have engaged, are engaging and/or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A) and (C) and 4o(1)(A) and (B) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(2)(A), (C), 6o(1)(A), (B) (2012).

7.      In addition to the above-described fraudulent conduct, Defendants Apuro and JCI acted and continue to act at all times during the Relevant Period as commodity trading advisors ("CTAs") by exercising discretionary trading authority or obtaining written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an eligible contract participant ("ECP") as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012), in connection with retail forex transactions, without being registered with the Commission as a CTA, as required by the "Act" and Commission Regulations ("Regulations").  Specifically, Defendants Apuro and JCI's failure to register as a CTA violates Sections 2(c)(2)(C)(iii)(I)(bb) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1) (2012), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2017).

8.     Similarly, Choi solicited and continues to solicit clients or prospective clients to open forex trading accounts, while associated with Defendants Apuro and JCI as a partner, officer, employee, consultant or agent, without being registered with the Commission as an associated person ("AP") of Apuro and JCI, as required by the Act and Regulations.  Specifically, Choi's failure to register as an AP of a CTA violates Sections 2(c)(2)(C)(iii)(I)(aa) and 4k(3) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2012), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2017).

9.     Accordingly, pursuant to Sections 2(c)(2)(C) and 6c of the Act, 7 U.S.C. §§ 2(c)(2)(C), 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and the Regulations, and to enjoin them from engaging in any commodity-interest related activity, as set forth below.  In addition, the Commission seeks civil monetary penalties for each violation of the Act and Regulations, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, an accounting, pre- and post-judgment interest, and such other relief as the Court deems necessary and appropriate.

10.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, and similar acts and practices, as more fully described below.

COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

## II.     JURISDICTION AND VENUE

11.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that United States district courts possess jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder, and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012), provides the Commission with jurisdiction over the forex solicitations and transactions at issue in this action.

12.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) (2012), because Choi resides in this District, Defendants transact or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur within this District.

COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

## III.   THE PARTIES

### A.   PLAINTIFF

13.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations.  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

### B.   DEFENDANTS

14.     Defendant **Jin Choi** resides in Los Angeles, California, and owns and operates AHL, ApuroFX, JCI Holdings, and JCI Trading Group.  Choi is a citizen of the Republic of South Korea who appears to have entered the United States in April 2015 on a F1-Visa, which allows a foreign individual to enter into the United States as a full-time student at an accredited college, university, seminary, conservatory, academic high school, or other academic institution or in a language training program.  Choi has never been registered with the Commission in any capacity.

15.     Defendant **Apuro Holdings, Ltd. ("AHL") d/b/a ApuroFX (together, "Apuro")** is a Hong Kong-incorporated entity listing Choi as a Director, with purported offices at (a) Flat B, 12/F, Kok Pah Mansion, 58-60 Cameron Road, Tsim Sham Tsui, Kowloon, Hong Kong ("Address A"), and (b) Room 1405, 14/F, Austin Tower, 22-26 Austin Avenue, Tsim Sham Tsui, Kowloon, Hong Kong ("Address B").  On information and belief, Address A is the address of a residential building in Hong Kong, and Address B is the address of Xigold Limited, a Hong Kong company

that provides secretarial services.  Neither AHL nor ApuroFX has ever been registered with the Commission in any capacity.

16.    Defendant **JCI Holdings USA ("JCI Holdings") d/b/a JCI Trading Group, LLC ("JCI Trading Group," and together with JCI Holdings, "JCI")** is a California corporation registered by Choi in October 2016, with a purported office at 468 N. Camden Dr., #222, Beverly Hills, California.  On information and belief, this address is the address of a virtual office business center.  JCI Trading Group has a website, *www.jcitrading.com*, operated by Choi that claims it is a "U.S. based global Forex Proprietary Trading Company," "headquartered in New York," with subsidiaries "currently operating in Germany, Japan, Korea, Hong Kong and Australia."  According to the website, Choi is the "founder" and "chief trader" of JCI Trading Group.  Neither JCI Holdings nor JCI Trading Group has ever been registered with the Commission in any capacity.

## IV.    STATUTORY BACKGROUND AND REGISTRATION REQUIREMENTS

17.    Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012), applies provisions of the Act to agreements, contracts, or transactions in forex.  Specifically, 7 U.S.C. § 2(c)(2)(C)(iv) (2012) states that Section 4b of the Act, 7 U.S.C. § 6b (2012), applies to forex agreements, contracts, or transactions "as if" they were contracts of sale of a commodity for future delivery.

18.    7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) prohibits any person from exercising discretionary trading authority or obtaining written authorization to exercise discretionary trading authority over any account for or on behalf of any non-ECP, unless registered with the Commission, with certain exceptions not applicable to Defendants.  In addition, Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2017), require any person acting as a CTA, as defined in Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2017), to be registered as such with the Commission.

19.    7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) prohibits any person from soliciting or accepting orders from any person that is not an ECP, unless registered with the Commission, with certain exceptions not applicable to Defendants.  In addition, Section 4k(3) of the Act, 7 U.S.C. § 6k(3)(2012), and 17 C.F.R. § 5.3(a)(3)(ii) (2017), require any person acting as an AP of a CTA, as defined in 17 C.F.R. § 5.1(e)(2) (2017), to be registered as such.

20.    For the purposes of trading forex, a CTA is defined in 17 C.F.R. § 5.1(e)(1) (2017) as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an eligible contract participant . . . in connection with retail forex transactions."

21.    For the purposes of trading forex, an AP of a CTA is defined in 17 C.F.R. § 5.1(e)(2) (2017) as "any natural person associated with a commodity trading

advisor . . . as a partner, officer, employee, consultant or agent . . . in any capacity which involves:  (i) The solicitation of a client's or prospective client's discretionary account; or (ii) The supervision of any person or persons so engaged."

22.     An ECP is defined by Section 1a(18)(xi) of the Act, in relevant part, as "an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of – (I) $10,000,000; or (II) $5,000,000 and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  7 U.S.C. § 1a(18)(xi) (2012).

## V.     FACTS

### A.     Defendants Fraudulently Solicited and Accepted Clients' Funds

23.     During the Relevant Period, Defendants, by and through Choi, solicited at least $350,600 from not less than six clients for the purported purpose of trading accounts in the forex market on their behalf.  Choi knowingly and falsely represented to actual and prospective clients that Choi was an experienced and profitable trader and that funds provided to Defendants would be used to trade off-exchange leveraged or margined retail forex contracts on their behalf.

24.     Defendants solicited and continue to solicit actual and prospective clients in person, by word-of-mouth, and through social media websites and various websites operated by Choi.  During the Relevant Period, Choi hosted investor seminars in the United States and abroad, including in Beverly Hills, California, and

Jakarta, Indonesia.  He advertised and continues to advertise his purported forex

trading expertise and asset management services through social media services such

as Instagram and Facebook and various websites he operates, including

*www.apuroforex.com* and *www.jcitrading.com.*

25.     Apuro and JCI, through Choi, solicited and continue to solicit actual and

prospective clients through, among other things, Apuro and JCI's websites,

*www.apuroforex.com* and *www.jcitrading.com.*

26.     Apuro's website and customer account documents falsely claim that

Apuro provides "investment services," and that trading "is available on the Meta

Trader 4 (MT4) platform, Web-based platform, MT4 multi-terminal, IPhone and

Mobile/Smartphone."  In addition, Apuro's customer agreement falsely states:

"APUROFOREX Financial group is a Futures Commission Merchant registered with

the Commodity Futures Trading Commission and a member of the National Futures

Association in the United States."  ApuroFX has never been registered with the

Commission or National Futures Association in any capacity.

27.     JCI Trading Group's website, *www.jcitrading.com*, falsely claims that

the firm "has been participating in the world foreign exchange market (FX) since

2005 and has been consistently generating high return [sic]."  The JCI Trading

Group's solicitation materials advertise JCI's "in-house training program" and JCI

Trading Group "membership," which provide benefits such as the opportunity to "get

mentored and trained by chief trader, Daniel J. Choi," one of the "most successful

professional FOREX trader [sic] in the world."  Further, the solicitation materials claim that a trader participating in the JCI Trading Group training program "receives 30% of profits."

28.     Apuro and JCI's websites are controlled by Choi.  Choi registered the domain name, *www.apuroforex.com*, in December 2012, and created a public website at that domain.  Choi registered the domain name, *www.jcitrading.com*, in September 2017, and created a public website at that domain.  During the Relevant Period, Choi used both websites to advertise Apuro and JCI's forex trading services.

29.     In September 2015, Choi held an investment seminar at the Shangri-La Hotel in Jakarta, Indonesia, where at least two clients met Choi and decided to provide funds to Choi for the purpose of forex trading.  In October 2015, Choi held another investment seminar at the Beverly Wilshire Hotel in Beverly Hills, California.  Choi required seminar attendees to pay $1,000 in advance to attend. During these seminars, Choi represented to actual and prospective clients that he traded forex through Apuro and/or JCI and promised annual returns between "20%-50%," payable to clients on a quarterly basis.  Choi further represented that he had more than ten years of trading experience with no losses and promised that his clients would "win trading forex."

30.     As a result of Defendants' solicitations, at least six non-ECP clients opened trading accounts through Choi during the Relevant Period.  Upon information and belief, each of these clients has an individual net worth of $5 million or less.

31.     The majority of these clients signed an "Investment Management Agreement" provided to them by Choi, which states among other things that:  (i) Apuro "is in the business of investment management using FOREX MARGIN TRADING"; (ii) "Mr. Daniel Jin Choi shall be appointed as the Chief Trader of forex trading brokerage APUROFX or APUROFOREX"; and (iii) clients "must establish and maintain, in [their] name, a live brokerage account(s) at *www.apuroforex.com*, into which [they] shall deposit investment funds, which shall be referred to as, managed assets."

32.     At Choi's instruction, clients wired funds to two bank accounts held in the names of AHL and Choi at Hongkong and Shanghai Banking Corporation, Hong Kong ("HSBC-HK").  These HSBC-HK bank accounts were opened by Choi and were under his control at all times during the Relevant Period.  Of the at least $350,600 solicited and accepted from clients, Defendants misappropriated all of clients' funds by transferring them to various bank accounts controlled by Choi, including personal accounts held in Choi's name at HSBC-HK, J.P. Morgan Chase, and Citibank.

33.     Choi represented to clients that Defendants opened Meta Trader 4 ("MT4") forex trading accounts in their names, and that Choi traded their accounts for them.  Choi provided clients with a user id and password to view their purported accounts online and on their smartphones via the MT4 application.

34.     These representations were false.  Defendants did not open any forex accounts in the names of clients, and never traded forex on behalf of clients.  The online accounts clients accessed via the MT4 application were "demo" or "hypothetical" trading accounts created by Defendants to deceive clients into believing that Defendants were trading forex on the clients' behalf.

**B.      Defendants Made Material Misrepresentations and Omissions of Material Facts to Clients and Prospective Clients**

35.      During the Relevant Period, Choi, individually and while acting on behalf of Apuro and JCI, knowingly made and continues to make material and fraudulent misrepresentations in person, through text messages, social media and Apuro and JCI websites and solicitation materials, including but not limited to:

    a.  Clients' funds would be used to open trading accounts in their names and to trade forex on their behalf;

    b.  Choi is a successful and profitable trader who has not experienced any trading losses in more than ten years;

    c.  Annual returns of 20%-50% would be paid to clients on a quarterly basis; and

    d.  ApuroFX is a registered FCM with the Commission and a member of the National Futures Association.

36.     During the Relevant Period, Choi, individually and while acting on behalf of Apuro and JCI, knowingly made and continues to make numerous

COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

omissions of material facts in person, through text messages, social media and Apuro and JCI websites, including but not limited to:

    a. Defendants never opened any forex trading accounts in clients' names;

    b. Defendants conducted no trading on behalf of clients;

    c. The purported trading accounts clients viewed online or on their smartphones were demo accounts and not actual trading accounts;

    d. Defendants misappropriated clients' funds for their own use;

    e. Neither Apuro, nor JCI, nor Choi is registered with the Commission as required by the Act; and

    f. Purported "profits" or withdrawals of principal paid to some clients were in fact the principal deposits of other clients and were not generated by profitable forex trading.

## C. Defendants Failed To Conduct Any Trading on Behalf of Clients and Misappropriated Clients' Funds

37.    While Defendants represented to clients that all funds would be used to trade forex on their behalf, in reality none of the $350,600 in funds Defendants solicited and accepted from clients were used for trading.

38.    Of the $350,600 Defendants solicited for forex trading, Defendants only deposited $3,000 of these funds into a forex trading account at registered futures commission merchant Forex Capital Markets, LLC ("FXCM") in Choi's name, not in

- 14 -

COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

the name of any client.  Choi opened the FXCM account in mid-April 2016, with a deposit of $3,000, and he was the sole person authorized to place trades in the account.  However, no trading occurred in the FXCM account, and Choi closed the FXCM account in early May 2016 after withdrawing the $3,000 he originally deposited.  Upon information and belief, Choi did not open any other U.S. forex trading accounts during the Relevant Period.

39.     During the Relevant Period, instead of trading clients' funds in trading accounts as promised, Defendants misappropriated clients' funds for unauthorized purposes, including to pay for Choi's personal expenses and to support his lavish lifestyle.  These expenses included but were not limited to:  the rental of a Beverly Hills, California condominium; the purchase and lease of luxury automobiles; shopping sprees at high-end retailers mostly located on Rodeo Drive in Beverly Hills, California; travel to Las Vegas, Nevada for gambling and luxury hotel stays; purchase of Vertu luxury cell phones; and, cash withdrawals.

40.     Defendants also misappropriated clients' funds to pay approximately $24,000 to certain clients who requested withdrawals from their accounts as either withdrawals of principal or as purported trading "profits" in the form of a "Ponzi" scheme.  Defendants did not disclose the nature of these payments to clients or prospective clients.

41.     Clients made repeated demands on Defendants for the return of their funds.  Choi falsely represented to certain clients that he could not return their funds

because HSBC-HK had frozen AHL's bank account.  Defendants failed to comply with clients' redemption demands, and the majority of clients were unable to obtain a return of their funds.

**D.     Apuro and JCI Acted as Unregistered CTAs, and Choi Acted as an Unregistered AP of a CTA**

42.     During the Relevant Period, Apuro and JCI, through Choi, acted and continue to act in a capacity requiring registration as a CTA by obtaining written authorization to exercise discretionary trading authority over forex accounts for or on behalf of persons that are not ECPs in connection with leveraged forex transactions.

43.     During the Relevant Period, Choi solicited and continues to solicit clients and prospective clients to open discretionary accounts engaged in retail, leveraged forex transactions, or supervised people so engaged, while associated with Apuro and JCI as a partner, officer, employee, consultant or similar agent.

44.     During the Relevant Period, Apuro and JCI were not registered with the Commission as CTAs, and Choi was not registered with the Commission as an AP of a CTA as required by the Act and Regulations.

# VI.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

## COUNT I

### FRAUD IN CONNECTION WITH FOREX CONTRACTS
**Violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2012)**
**(Defendants Choi, Apuro, and JCI)**

45.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

46.     Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012) makes it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, [ . . . ] that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; . . . [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

47.     Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), 7 U.S.C. § 6b (2012) applies to the forex transactions, agreements, or contracts offered by Defendants "as if" they were contracts of sale of a commodity for future delivery.

48.     As described herein, Defendants violated and continue to violate 7 U.S.C. § 6b(a)(2)(A) and (C) (2012) by cheating or defrauding, or attempting to cheat

or defraud, other persons, and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the off-exchange leveraged or margined forex transactions alleged herein, by, among other things:  (i) fraudulently soliciting clients and prospective clients by making material misrepresentations and omissions about Defendants' trading abilities and profits, and Defendants' use of deposited funds; and (ii) misappropriating pool participants' funds, all in violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2012).

49.   Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to:  interstate wires for transfer of funds, email, websites, and other electronic communication devices.

50.   Choi, acting both individually and as agent and officer of Apuro and JCI, engaged in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.

51.   Choi controlled Apuro and JCI, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Apuro and JCI to commit the acts and/or omissions alleged herein.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Choi is liable for Apuro and JCI's violations of 7 U.S.C. § 6b(a)(2)(A) and (C) (2012).

52.   At all times during the Relevant Period, Choi acted within the course and scope of his employment, agency, or office with Apuro and JCI.  Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R.

§ 1.2 (2017), Apuro and JCI are liable as principal for Choi's violations of 7 U.S.C.

§ 6b(a)(2)(A) and (C) (2012).

53.     Each act of fraudulent solicitation and misappropriation, including but

not limited to those specifically alleged herein, is alleged as a separate and distinct

violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2012).

## COUNT II

### FRAUD BY A COMMODITY TRADING ADVISOR
**Violation of 7 U.S.C. § 6o(1)(A) and (B) (2012)**
**(Defendants Choi, Apuro, and JCI)**

54.     The allegations set forth in the preceding paragraphs are re-alleged and

incorporated herein by reference.

55.     Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), makes it unlawful for

a CTA or an AP of a CTA:

> by use of the mails or any other means or instrumentality of interstate
> commerce, directly or indirectly – (A) to employ any device, scheme, or
> artifice to defraud any client or participant or prospective client or
> participant; or (B) to engage in any transaction, practice, or course of
> business which operates as a fraud or deceit upon any client or
> participant or prospective client or participant.

56.     As alleged herein, during the Relevant Period, Apuro and JCI, by use of

the mails or any other means or instrumentality of interstate commerce, acted and

continue to act as CTAs by exercising discretionary trading authority or obtaining

written authorization to exercise discretionary trading authority over any account for

or on behalf of any person that is not an ECP, as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012), in connection with retail forex transactions.

57.     Choi has also acted at all times during the Relevant Period as an unregistered AP of CTAs Apuro and JCI.  Choi, by use of the mails or any other means or instrumentality of interstate commerce, acted and continues to act as an AP of a CTA by soliciting clients and prospective clients to open discretionary accounts in retail or leveraged forex transactions, while associated with Apuro and JCI as a partner, employee, consultant or similar agent.

58.     Defendants violated and continue to violate 7 U.S.C. § 6*o*(1)(A) and (B) (2012) in that they employed or are employing a device, scheme, or artifice to defraud actual and prospective clients or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon clients or prospective clients, including without limitation:  misappropriation of clients' funds; misrepresenting and/or omitting material facts in solicitations and communications with clients; and, acting as CTAs without registering as such as required by the Act and Regulations.

59.     Choi controlled Apuro and JCI, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Apuro and JCI to commit the acts and/or omissions alleged herein.  Therefore, pursuant to 7 U.S.C. § 13c(b) (2012), Choi is liable for Apuro and JCI's violations of 7 U.S.C. § 6*o*(1)(A) and (B) (2012).

60.     At all times during the Relevant Period, Choi acted within the course and scope of his employment, agency, or office with Apuro and JCI.  Pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2017), Apuro and JCI are liable as principal for Choi's violations of 7 U.S.C. § 6*o*(1)(A) and (B) (2012).

61.     Each act of fraudulent solicitation and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A) and (B) (2012).

## COUNT III

### FAILURE TO REGISTER AS COMMODITY TRADING ADVISOR
**Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1) (2012) and 17 C.F.R. § 5.3(a)(3)(i) (2017)**
**(Defendants Apuro and JCI)**

62.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

63.     As alleged herein, during the Relevant Period, Apuro and JCI acted and continue to act as CTAs, as defined in Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2017), because they obtained written authorization to exercise discretionary trading authority over the accounts of Defendants' clients, all or nearly all of whom are not ECPs, as defined in 7 U.S.C. § 1a(18) (2012), in connection with retail forex transactions.  Apuro and JCI engaged in this conduct without being registered with the Commission as CTAs, in violation of Sections 2(c)(2)(C)(iii)(I)(bb) and 4m(1) of

the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1) (2012), and Regulation 5.3(a)(3)(i),

17 C.F.R. § 5.3(a)(3)(i) (2017).

64.     Choi controlled Apuro and JCI, directly or indirectly, and did not act in

good faith and knowingly induced, directly or indirectly, Apuro and JCI to commit

the acts and/or omissions alleged herein.  Therefore, pursuant to 7 U.S.C. § 13c(b)

(2012), Choi is liable for Apuro and JCI's violations of 7 U.S.C.

§§ 2(c)(2)(C)(iii)(I)(bb), 6m(1) (2012) and 17 C.F.R. § 5.3(a)(3)(i) (2017).

65.     Each instance during the Relevant Period in which Apuro and JCI acted

as unregistered CTAs, including but not limited to those specifically alleged herein, is

alleged as a separate and distinct violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1)

(2012) and 17 C.F.R. § 5.3(a)(3)(i) (2017).

## COUNT IV

**FAILURE TO REGISTER AS AN ASSOCIATED PERSON OF A
COMMODITY TRADING ADVISOR
Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2012) and 17
C.F.R. § 5.3(a)(3)(ii) (2017)
(Defendant Choi)**

66.     The allegations in the preceding paragraphs are re-alleged incorporated

herein by reference.

67.     During the Relevant Period, Choi acted and continues to act as an AP of

a CTA, as defined in Regulation 5.1(e)(2), 17 C.F.R. § 5.1(e)(2) (2017), because he is

a natural person associated with a CTA as defined in 17 C.F.R. § 5.1(e)(1) (2017), as

a partner, officer, employee, consultant, or agent, in a capacity that involved and

continues to involve: (i) the solicitation of a client's or prospective client's discretionary account; or (ii) the supervision of any person or persons so engaged. Choi engaged and continues to engage in this conduct without being registered with the Commission as an AP of CTAs Apuro and JCI, in violation of Sections 2(c)(2)(C)(iii)(I)(aa) and 4k(3) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2012), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2017).

68.     At all times during the Relevant Period, Choi acted within the course and scope of his employment, agency, or office with Apuro and JCI. Pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2017), Apuro and JCI are liable for Choi's violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2012) and 17 C.F.R. § 5.3(a)(3)(ii) (2017).

69.     Each instance that Choi engaged in this conduct and failed to register as an AP of Apuro and JCI with the Commission is a separate and distinct violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2012) and 17 C.F.R. § 5.3(a)(3)(ii) (2017).

## VII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to the Court's inherent equitable powers, enter:

A.     an order finding Choi, Apuro, and JCI liable for violating Sections 4b(a)(2)(A) and (C) and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), 6o(1)(A), (B) (2012);

B.      an order finding that Apuro and JCI violated Sections 2(c)(2)(C)(iii)(I)(bb) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1) (2012), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2017);

C.      an order finding that Choi violated Sections 2(c)(2)(C)(iii)(I)(aa) and 4k(3) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2012), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2017);

D.      an order of permanent injunction prohibiting Defendants and any other person or entity associated with them from directly or indirectly:

(i)      trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(ii)      entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2017, as amended by 83 Fed. Reg. 7979 (Feb. 23, 2018))) for their own personal account or for any account in which they have a direct or indirect interest;

(iii)      having any commodity interests traded on their behalf;

(iv)      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(v)      soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vi)   applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017);

(vii)   acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9) (2017);

(viii)   engaging in any business activities related to commodity interests;

E.   an order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

F.   an order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity whose funds they received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

G.      an order directing Defendants, as well as any successors thereof, to provide a full accounting of all client funds they have received during the Relevant Period as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

H.      an order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations, as described herein;

I.      an order directing Defendants to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1), 7 U.S.C. § 13a-1(d)(1)(2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), title VII, Section 701, *see* 17 C.F.R. § 143.8 (2017), for each violation of the Act and Regulations described herein;

J.      an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

K.      such other and further relief as the Court deems proper.

Dated:  May 14, 2018                    Respectfully submitted,

                                         COMMODITY FUTURES
                                         TRADING COMMISSION

                                         /s/ James H. Holl
                                         JAMES H. HOLL, III. CA Bar No. 177885
                                         TIMOTHY J. MULREANY, *pro hac vice*
                                              *pending*
                                         DANIELLE KARST, *pro hac vice pending*
                                         Attorneys for Plaintiff
                                         COMMODITY FUTURES
                                         TRADING COMMISSION
                                         1155 21st Street, N.W.
                                         Washington, D.C. 20581
                                         Telephone: (202) 418-5000
                                         jholl@cftc.gov
                                         tmulreany@cftc.gov
                                         dkarst@cftc.gov

COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY
PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS