JAMES H. HOLL, III. CA Bar No. 177885
TIMOTHY J. MULREANY, *pro hac vice*
DANIELLE KARST, *pro hac vice*
Attorneys for Plaintiff
COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000
jholl@cftc.gov
tmulreany@cftc.gov
dkarst@cftc.gov

**THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> JIN CHOI, APURO HOLDINGS LTD. d/b/a APUROFX, and JCI HOLDINGS USA d/b/a JCI Trading Group, LLC <br><br> Defendants. | Case No. 2:18-cv-03991-DMG-AFM |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY
PENALTY AND OTHER EQUITABLE RELIEF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.     PROCEDURAL HISTORY……………………………………………...2

II.    STATEMENT OF FACTS……………………………………………….4

III.   ARGUMENT……………………………………………………………7

    A. Jurisdiction……………………………………………………………7

    B. Default Judgment is Warranted Against All Defendants………………..8

    C. *Eitel* Factors………………………………………………………..9

    1. All Four Causes of Action in the Complaint Have Substantive Merit and
    Are Sufficiently Alleged (*Eitel* Factors 1 and 2)....................................9

        a. Choi, Apuro, and JCI Committed Forex Fraud (Complaint Count
        I)…………………………………………………………………..9

            i.  Choi, Apuro, and JCI Committed Fraud Through Material
            Misrepresentations and Omissions………………………10

            ii. Choi, Apuro, and JCI Acted with Scienter………………12

            iii. Choi, Apuro, and JCI Committed Fraud by
            Misappropriating Clients' Funds…………………………13

            iv. Choi is Liable as a Controlling Person………………...14

            v.  Apuro and JCI are Liable for the Acts of its Agent Choi...15

        b. Apuro and JCI Committed Fraud as Commodity Trading Advisors
        (Complaint Count II)…………………………………………16

        c. Apuro and JCI Failed to Register with the CFTC as Commodity
        Trading Advisors (Complaint Count III)………………………..18

        d. Choi Failed To Register with the CFTC as an Associated Person
        of a Commodity Trading Advisor (Complaint Count IV)………19

    2. The Remaining *Eitel* Factors Support Entry of Default Judgment (*Eitel*
    Factors 3-7)…………………………………………………..21

        a. There is Minimal Possibility of Dispute Concerning Material
        Facts……………………………………………………………..21

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A DEFAULT JUDGMENT

b. There is no Evidence that Default Was Due to Excusable Neglect……………………………………………………..21

c. The CFTC Will Suffer Prejudice if Default Judgment is Not Entered……………………………………………………..22

d. Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment…………………………………………...23

e. Sum of Money at Stake…………………….……………………24

D. Remedies and Damages…………………………………………..25

1. Permanent Injunction……………………………………………25

2. Restitution, Civil Monetary Penalty, and Post-Judgment Interest….26

a. Restitution………………………………………………27

b. Civil Monetary Penalty…………………………………………28

c. Post-Judgment Interest……………………………………30

IV. CONCLUSION…………………………………………………30

# TABLE OF AUTHORITIES

## Cases

*Abu-Assal v. Abu-Assal*, No. EDCV 01-0153 GAF, 2010 WL 11508162, at *2 (C.D.
Cal. Feb. 8, 2010)……………………………………………………………………22

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980)…………………………..8

*Cange v. Stotler & Co*., 826 F.2d 581, 589 (7th Cir. 1987)…………………………12

*CFTC ex rel. Kelley v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985)……...17

*CFTC v. Am. Bullion Exch. ABEX Corp*., No. SACV 10–01876, 2014 WL 3896023,
at *18 (C.D. Cal. Aug. 7, 2014) (citing *CFTC v. Arrington,* 998 F. Supp. 2d 847, 875
(D. Neb. 2014))…………………………………………………………………………28

*CFTC v. Am. Bullion Exch. ABEX Corp.*, No. SACV10–1876, 2014 WL 12603558, at
*11 (C.D. Cal. Sept. 16, 2014)………………………………………………………30

*CFTC v. Arrington,* 998 F. Supp. 2d 847, 875 (D. Neb. 2014)………………...……28

*CFTC v. Aurifex Comm. Research Co*., No. 1:06–CV–166, 2008 WL 299002, at *6
(W.D. Mich. Feb. 1, 2008)………………………………………………………..…17

*CFTC v. Baragosh*, 278 F.3d 319, 330-31 (4th Cir. 2002)………………………14

*CFTC v. Byrnes*, 58 F. Supp. 3d 319, 326 (S.D.N.Y. 2014)………………………...16

*CFTC v. Co Petro Mktg. Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980)………25

*CFTC v. Commonwealth Fin. Grp*., 874 F. Supp. 1345, 1353 (S.D. Fla. 1994)…….11

*CFTC v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012)…………………..passim

*CFTC v. Emerald Worldwide Holdings, Inc*., No. CV03-8339AHM, 2005 WL
1130588, at *13 (C.D. Cal. Apr. 19, 2005)………………………….........26, 27, 30

*CFTC v. Int'l Fin. Servs*., 323 F. Supp. 2d 482, 504-505 (S.D.N.Y. 2004)………....14

*CFTC v. Leighton*, No. 2:12–cv–04012, 2013 WL 4101874, at *9 (C.D. Cal. July 8,
2013)………………………………………………………………..………………..27

*CFTC v. Nat'l Invest. Consultants, Inc*., No. C 05-02641, 2005 WL 2072105, at *8
(N.D. Cal. Aug. 26, 2005)……………………………………….………………12

*CFTC v. Noble Metals Int'l*, 67 F.3d 766, 774 (9th Cir. 1995)………….…………..12

*CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000)……………………………………………………………………..11,12,13

*CFTC v. Premium Income Corp.*, No. Civ. A. 3:05CV0416B, 2007 WL 429092, at *14 (N.D. Tex. Jan. 26, 2007)…………………………………………………30

*CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002)……………10

*CFTC v. Safevest, LLC*, No. SACV08–00474, 2009 WL 2448116, at *4-5 (C.D. Cal. July 13, 2006)………………………………………………………………..…24

*CFTC v. Savage*, 611 F.2d 270, 285 (9th Cir. 1979)……………….……………..17

*CFTC v. Schiera*, No. CV05 2660 CAS, 2006 WL 4586786, at *7, *9 (S.D. Cal. Dec. 11, 2006)…………………………………………………………………………24

*CFTC v. Trimble*, No. 11–cv–02887, 2013 WL 317576, at *9 (D. Colo. Jan. 28, 2013)……………………………………………………………………………28

*CFTC v. Vartuli*, 228 F.3d 94, 103 (2d Cir. 2000)………………………….……17

*CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003)……………..13, 17

*Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978)……………………….…9

*DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007)……………………9

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)………………………....8

*Garcia v. Fidelity Mortgage Company*, No. C 05-05144 MHP, 2009 WL 1246921, at *4 (N.D. Cal. May 5, 2009)………………………………………………………23

*Garden City Boxing Club, Inc. v. Aranda*, 384 F. App'x 688, 689 (9th Cir. 2010)…26

*Guttman v. CFTC*, 197 F.3d 33, 39-40 (2d Cir. 1999)………………………….....16

*Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-02025, 2014 WL 12601015, at *2 (C.D. Cal. July 17, 2014)………………………………………………………………..22

*Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (1992)…………………14

*In re Slusser*, CFTC No. 94-14, 1999 CFTC LEXIS 167, at *31-33 (July 9, 1999), *aff'd and remanded on other grounds sub nom. Slusser v. CFTC*, 210 F.3d 783, 785-86 (7th Cir. 2000)…………………………………………………………..10, 29

*In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *7 (Jan. 12, 1988)…………..15

*In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)……………………………………....8

*JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995)……………………...29

*Lawrence v. CFTC*, 759 F.2d 767, 773 (9th Cir. 1985)…………………………12, 23

*Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)……………..……………..28

*Monieson v. CFTC*, 996 F.2d 852, 859 (7th Cir. 1993)…………………….....…14

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)…………………………………………………………..…………23, 24

*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)…………..…8

*Philip Morris, USA, Inc. v. Castworld Prods, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)……………………………………………………………………...…9

*SEC v. Fortitude Group., Inc.*, C.A. No. 16-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017)………………………………………………………………..23

*SEC v. Princeton Econ. Int'l*, 1999 WL 997149, at *4 (S.D.N.Y. Nov. 3, 1999)…...17

*Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB, 2016 WL 6661175, at *3 (C.D. Cal. Mar. 17, 2016)…………………………………………….9, 21, 22

*Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004)……23

*Stotler & Co. v. CFTC*, 855 F.2d 1288, 1292 (7th Cir. 1988)………………………16

*TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)……...21

*Vogel v. Rite Aid Corp.*, 992 F. Supp. 998, 1007 (C.D. Cal. 2014)………………22

**Statutes**

7 U.S.C. § 13a-1 (2012)………………………………………………………passim

7 U.S.C. § 13c (2012)…………………………………………………..…14

7 U.S.C. § 1a (2012)……………………………………………………….18, 19

7 U.S.C. § 2 (2012)…………………………………………………….…..passim

7 U.S.C. § 6b (2012)………………………………………………………passim

7 U.S.C. § 6k (2012)………………………………………………………19, 20

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A DEFAULT JUDGMENT

7 U.S.C. § 6m (2012)……………………………………………......18, 19

7 U.S.C. § 6o (2012)……………………………………………16, 17, 18

28 U.S.C. § 1961(a) (2012)………………………………………………30

**Regulations**

17 C.F.R. § 1.2 (2018)……………………………………………………15

17 C.F.R. § 5.1 (2018)……………………………………….…...18, 20

17 C.F.R. § 5.3 (2018)……………………………………………...18, 20

17 C.F.R. § 143.8 (2018)……………………………………...28, 29

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55(b), Plaintiff U.S. Commodity Futures Trading Commission ("Plaintiff," "CFTC," or "Commission") respectfully requests that the Court enter final judgment by default against Jin Choi ("Choi"), Apuro Holdings, Ltd. ("AHL") d/b/a ApuroFX (together, "Apuro") and JCI Holdings USA ("JCI Holdings") d/b/a JCI Trading Group, LLC ("JCI Trading Group," and together with JCI Holdings, "JCI") (Choi, together with Apuro and JCI, "Defendants").

## I.  PROCEDURAL HISTORY

On May 14, 2018, Plaintiff filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations ("Complaint," ECF # 1) against Defendants for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-27f (2012), and its implementing regulations, 17 C.F.R. pts. 1-190 (2018).

On May 24, 2018, pursuant to Fed. R. Civ. P. 4(e)(2)(A), Plaintiff's process server personally served Choi at his residence in Los Angeles, California, with the Summons, the Complaint, and all associated papers.[1]  (Proof of Service executed by Nicole Lopez, dated May 28, 2018, ECF # 16).

On May 24, 2018, pursuant to Fed. R. Civ. P. 4(h)(1)(B), Plaintiff's process server served Apuro with the Summons, the Complaint, and all associated papers by providing them to Choi, an officer of Apuro who is authorized to accept service on

---

[1] The "associated papers" are identified in the Proof of Service affidavits executed by Nicole Lopez, dated May 28, 2018 (ECF # 16-18), and includes all moving papers related to Plaintiff's Motion for Preliminary Injunction (ECF # 9).

behalf of Apuro.[2]  (Proof of Service executed by Nicole Lopez, dated May 28, 2018, ECF # 17).

On May 24, 2018, pursuant to Fed. R. Civ. P. 4(h)(1)(B), Plaintiff's process server served JCI with the Summons, the Complaint, and all associated papers by providing them to Choi, an officer of JCI who is authorized to accept service on behalf of JCI.[3]  (Proof of Service executed by Nicole Lopez, dated May 28, 2018, ECF # 18).

Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), all Defendants were required to answer or move against the Complaint within 21 days of service, or by June 14, 2018. Defendants failed to appear in the action, plead, or otherwise respond to the Complaint, prompting Plaintiff to submit an Application for Entry of Default Against All Defendants (the "Application") pursuant to Fed. R. Civ. P. 55(a) on June 15, 2018 (ECF # 20).

On June 18, 2018, the Clerk of the Court granted the Application, placing all Defendants in default.  (ECF # 21).  To date, none of the Defendants in this action have pled, answered, or otherwise defended the action.  The CFTC has been unable to contact Choi to discuss this motion or any potential resolution of this matter because

_____

[2] As alleged in the Complaint and supported by the Declaration of George H. Malas dated May 17, 2018 ("Malas Decl.," ECF # 9-3), Choi is a Director of Apuro (Compl. ¶ 15; Malas Decl. ¶¶ 5a, 12).  The Malas Declaration and related attachments, 1-12, were submitted to the Court in Support of Plaintiff's Motion for Preliminary Injunction and Other Statutory and Equitable Relief (ECF # 9 to 9-20).

[3] As alleged in the Complaint and supported by the Malas Declaration dated May 17, 2018, Choi is the founder, chief trader, and incorporator of JCI (Compl. ¶ 16; Malas Decl. ¶¶ 5b, 13).

his whereabouts are unknown.  *See* Local Rule ("L.R.") 7-3; Declaration of Danielle Karst dated July 20, 2018 in Support of Motion for Default Judgment ("Karst Decl.") ¶ 8, submitted herewith; Karst Decl. Ex. 2 (U.S. Customs and Border Protection Person Encounter List ("CBP Person Encounter List")).  Plaintiff now moves for a default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b).

## II.    STATEMENT OF FACTS

As alleged in the Complaint, incorporated herein by reference, from at least January 2014 and continuing through the present (the "Relevant Period"), Jin Choi, acting both individually and as the principal and agent of Apuro and JCI, fraudulently solicited and accepted at least $1,155,572 from fourteen individuals ("clients") for the purported purpose of trading off-exchange leveraged or margined retail foreign currency ("forex") contracts on their behalf.  (Compl. ¶¶ 1, 23; Malas Decl. ¶ 5d; Supplemental Malas Declaration dated July 20, 2018 ("Malas Decl. II," submitted herewith) ¶¶ 7-8, 10.[4]  Choi created and operates a number of business entities that he

---

[4] Since the filing of the CFTC's Motion for Preliminary Injunction and all associated papers on May 17, 2018 (ECF # 9), the CFTC has obtained additional information and records revealing at least eight additional clients who provided an additional $795,072 to Choi, for a total of $1,155,572, for the purpose of trading forex. Accordingly, following the Malas Declaration submitted to the Court on May 17, 2018 (ECF # 9-3), CFTC Futures Trading Investigator Malas performed an additional analysis of clients' deposits to calculate precise amounts for the CFTC's restitution and civil monetary penalty requests.  Malas' analysis and calculations are provided in Malas Decl. II, submitted herewith.  Except where otherwise noted, citations to "Ex." refer to Exhibits attached to the Malas Declarations (e.g., Malas Decl. Ex. 2; Malas Decl. II Ex. 2).

uses to perpetuate his fraud, including Apuro and JCI (Compl. ¶ 2; Malas Decl. ¶¶ 5a, 5e).

Defendants, without registering with the Commission as commodity trading advisors ("CTAs") and/or an associated person ("AP") of a CTA, solicited and continue to solicit clients or prospective clients through investor seminars hosted by Choi in the United States and abroad, social media accounts such as www.instagram.com ("Instagram") and www.facebook.com ("Facebook"), and various websites operated by Choi, including www.apuroforex.com and www.jcitrading.com.  (Compl. ¶¶ 3, 24-25; Malas Decl. ¶¶ 5e, 7).  Defendants, by and through Choi, made material misrepresentations in their solicitations, including by misrepresenting that:  (1) clients' funds would be used to open trading accounts in their names and to trade forex on their behalf; (2) Choi is a successful and profitable trader who has not experienced any trading losses in more than ten years; (3) annual returns of 20%-50% would be paid to clients on a quarterly basis; and (4) ApuroFX is registered with the Commission as a futures commission merchant ("FCM") and a member of the National Futures Association.  (Compl. ¶¶ 4, 23, 26, 35; Malas Decl. ¶¶ 5e, 15a, 17b, 18c).

Defendants also omitted material facts in their solicitations, including by failing to disclose that:  (1) Defendants never opened trading accounts in clients' names; (2) Defendants conducted no trading on behalf of clients; (3) the supposed trading accounts clients viewed online or on their smartphones were demo accounts

and not actual trading accounts; (4) Defendants misappropriated clients' funds for their own benefit; (5) neither Apuro nor JCI nor Choi was registered with the Commission as required by the Act and Regulations; and (6) purported "profits" or withdrawals of principal paid to some clients were in fact principal deposits of other clients and were not generated by profitable forex trading.  (Compl. ¶¶ 4, 34, 36, 40).

Contrary to their claims, Defendants did not conduct any forex trading on behalf of these clients.  (Compl. ¶¶ 34, 36-38; Malas Decl. ¶¶ 5i-5j).  Of the $1,155,572 Defendants solicited for forex trading, Choi deposited only $3,000 of these funds into a forex trading account in Choi's name at registered FCM Forex Capital Markets, LLC ("FXCM").  (Compl. ¶¶ 34, 36-38; Malas Decl. ¶¶ 5i-5j).  Choi opened the FXCM account in mid-April 2016, with a deposit of $3,000, and he was the sole person authorized to trade in the account.  (Compl. ¶ 38; Malas Decl. ¶¶ 5n, 20-21).  However, no trading occurred in the FXCM account, and Choi closed the FXCM account in early-May 2016 after withdrawing the $3,000 he originally deposited to open the account.  (Compl. ¶ 38; Malas Decl. ¶¶ 5n, 20-21).[5]

Defendants misappropriated all of the at least $1,155,572 they obtained from clients and used the misappropriated funds to support Choi's lavish lifestyle, including but not limited to:  the rental of a Beverly Hills, California condominium; the purchase and lease of luxury automobiles; shopping sprees at high-end retailers mostly located on Rodeo Drive in Beverly Hills, California; travel to Las Vegas,

---

[5] Upon information and belief, Choi did not open any other U.S. trading accounts during the Relevant Period.  (Malas Decl. ¶¶ 19-21).

Nevada for gambling and luxury hotel stays; purchase of Vertu luxury cell phones; and, cash withdrawals.  (Compl. ¶¶ 5, 39; Malas Decl. ¶¶ 5j, 45).  As part of the fraudulent scheme, Defendants returned approximately $24,000 to certain clients as withdrawals of principal or as purported "profits" in the manner of a Ponzi scheme.  (Compl. ¶¶ 5, 40; Malas Decl. ¶¶ 5j, 45; Malas Decl. II ¶¶ 7, 11).  However, the majority of clients were unable to obtain a return of any of their funds despite their repeated demands to Defendants.  (Compl. ¶ 41; Malas Decl. ¶ 45; Malas Decl. II ¶ 9; Malas Decl. II Ex. 1-5).

## III.    ARGUMENT

### A.    Jurisdiction

This Court possesses subject matter jurisdiction over this action pursuant to 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive and other relief in a United States district court against any person whenever it appears to the CFTC that such person has violated the Act or Regulations.  (Compl. ¶ 11).  The Court possesses personal jurisdiction over Choi because he resided in this District and committed the acts alleged in the Complaint within this District, and over Apuro and JCI because they conducted business in this District (Compl. ¶¶ 14-16, 29; Malas Decl. ¶¶ 5a-5c, 16a-16b).[6]  JCI also maintained an address in this District.  (Compl. ¶ 16; Malas Decl. ¶ 5b; Malas Decl. Ex. 2 (Calif. Sec. of State corporate registration records, ECF # 9-5)).

---

[6] Venue is proper in this District for the same reasons.  7 U.S.C. § 13a-1(e) (2012).

**B.     Default Judgment is Warranted Against All Defendants**

Following an entry of default, Fed. R. Civ. P. 55(b) permits the Court to enter default judgment in the plaintiff's favor.  In considering a motion for default judgment, a court must first determine that it possesses "jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The decision to enter default judgment is then left to the sound discretion of the court. *See* Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980).

When deciding whether to grant default judgment, the Ninth Circuit considers the following factors:  (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the possibility of a dispute concerning material facts; (4) whether default was due to excusable neglect; (5) the possibility of prejudice to the plaintiff if the motion is denied; (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits; and (7) the sum of money at stake in the action.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) ("*Eitel* factors"). [7]  "In applying this discretionary standard, default judgments are more often granted than denied."  *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  As detailed below, each *Eitel* factor weighs in favor of granting Plaintiff's Motion for Default Judgment against Defendants.  Further, the CFTC meets the procedural requirements required by Fed. R. Civ. P. 55(b) and the Local Rules of the Court.  *See* Fed. R. Civ. P. 55(b)(2); L.R. 55-1; Karst Decl. ¶¶ 3-6 (setting forth

---

[7] For organizational purposes, this Memorandum addresses the seven *Eitel* factors in a numerical order that differs from the *Eitel* opinion.

1    information required by L.R. 55-1); Karst Decl. Ex. 1 (Status Report pursuant to

2    Servicemembers Civil Relief Act) and 2 (CBP Person Encounter List).

3    **C.    *Eitel* Factors**

4

5        **1.   All Four Causes of Action in the Complaint Have Substantive Merit
             and Are Sufficiently Alleged (*Eitel* Factors 1 and 2)**

6

7        The first two Eitel factors assess the substantive merit of the movant's claims

8    and the sufficiency of its pleadings.  These factors require that a plaintiff "state a

9    claim upon which it may recover."  *Philip Morris, USA, Inc. v. Castworld Prods,*

10   *Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003); *see also Danning v. Lavine,* 572 F.2d

11

12   1386, 1388 (9th Cir. 1978).  In considering a motion for default judgment, "'well-

13   pleaded factual allegations' are accepted as true, except for allegations relating to

14   damages."  *Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB, 2016 WL

15

16   6661175, at *3 (C.D. Cal. Mar. 17, 2016) (quoting *DirecTV, Inc. v. Hoa Huynh*, 503

17   F.3d 847, 854 (9th Cir. 2007)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation–other

18   than one relating to the amount of damages–is admitted if a responsive pleading is

19

20   required and the allegation is not denied.").  As detailed below, the CFTC has

21   adequately pleaded its claims against all Defendants.

22

23       **a.   Choi, Apuro, and JCI Committed Forex Fraud (Complaint
             Count I)**

24

25       7 U.S.C. § 6b(a)(2)(A) and (C) (2012) make it unlawful for any person:  (A) to

26   cheat or defraud or attempt to cheat or defraud another person; or (C) willfully to

27   deceive or attempt to deceive another person by any means whatsoever in connection

28

1  with certain off-exchange commodity contracts.  7 U.S.C. § 6b(a)(2)(A) and (C)

2  (2012) apply to forex transactions as if they were futures contracts pursuant to 7

3  U.S.C. § 2(c)(2)(C)(iv) (2012).  To establish liability for fraud based on

4  misrepresentations and omissions under 7 U.S.C. § 6b(a)(2) (2012), the CFTC must

5  prove that:  (1) a misrepresentation, false or misleading statement, or deceptive

6  omission was made; (2) with scienter; and (3) the misrepresentation, false or

7  misleading statement, or deceptive omission was material.  *CFTC v. R.J. Fitzgerald*

8  *& Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *see also In re Slusser*, CFTC No. 94-

9  14, 1999 CFTC LEXIS 167, at *31-33 (July 9, 1999), *aff'd and remanded on other*

10 *grounds sub nom. Slusser v. CFTC*, 210 F.3d 783, 785-86 (7th Cir. 2000) (holding

11 that CFTC's findings regarding fraud were supported by substantial evidence).

### i.  Choi, Apuro, and JCI Committed Fraud Through Material Misrepresentations and Omissions

15  The first and third elements of fraud by misrepresentations and omissions are

16 met here because Defendants made material misrepresentations and failed to disclose

17 material facts to their clients and prospective clients.  Whether a misrepresentation or

18 omission has been made is determined objectively and holistically, through

19 examination of the "overall message" and the "common understanding of the

20 information conveyed."  *R.J. Fitzgerald*, 310 F.3d at 1328.  A statement or omission

21 is material if "a reasonable investor would consider it important in deciding whether

22 to make an investment."  *R.J. Fitzgerald & Co.*, 310 F.3d at 1328-29.

28 "Misrepresentations concerning profit and risk go to the heart of a customer's

investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000) (citing *CFTC v. Commonwealth Fin. Grp.*, 874 F. Supp. 1345, 1353 (S.D. Fla. 1994)).

Choi, individually and while acting on behalf of Apuro and JCI, knowingly made and continues to make material misrepresentations in person, through text messages, social media and websites, including by misrepresenting material facts, such as: (1) clients' funds would be used to open trading accounts in their names and to trade forex on their behalf; (2) Choi is a successful and profitable trader who has not experienced any trading losses in more than ten years; (3) annual returns of 20%-50% would be paid out to clients on a quarterly basis; and (4) ApuroFX is a registered FCM with the CFTC and a member of the National Futures Association. All of these representations are false.

Similarly, Choi, individually and while acting on behalf of Apuro and JCI, knowingly made and continues to make material omissions to attract and retain clients, including by failing to disclose that: (1) Defendants never opened any trading accounts in clients' names; (2) Defendants conducted no trading on behalf of clients; (3) the purported trading accounts clients viewed online or on their smartphones were demo accounts and not actual trading accounts; (4) Defendants misappropriated clients' funds for their own use; (5) neither Apuro nor JCI nor Choi was registered with the CFTC as required by the Act; and (6) purported "profits" or withdrawals of

1  principal paid to some clients were in fact the principal deposits of other clients and

2  were not generated by profitable forex trading.

### ii.   Choi, Apuro, and JCI Acted with Scienter

4

5      Choi, individually and while acting on behalf of Apuro and JCI, acted with the

6  requisite scienter to violate 7 U.S.C. § 6b(a)(2) (2012).  Scienter requires proof that a

7  defendant committed the alleged wrongful acts intentionally or with reckless

8

9  disregard for his or her duties under the Act.  *See CFTC v. Noble Metals Int'l*, 67

10 F.3d 766, 774 (9th Cir. 1995) (holding that scienter is established when defendants

11 act intentionally or with "careless disregard"); *Lawrence v. CFTC*, 759 F.2d 767, 773

12

13 (9th Cir. 1985) (finding that the CFTC only needed to show that a defendant's actions

14 were "intentional as opposed to accidental").  The CFTC can establish scienter by

15 showing that a defendant "knew the representations were false and were calculated to

16

17 cause harm or by showing that the representations were made with a reckless

18 disregard for their truth or falsity."  *CFTC v. Nat'l Invest. Consultants, Inc*., No. C

19 05-02641, 2005 WL 2072105, at *8 (N.D. Cal. Aug. 26, 2005) (citing *Noble Wealth*,

20

21 90 F. Supp. 2d at 686)).  The CFTC need not prove "an evil motive or intent to injure

22 a customer."  *Cange v. Stotler & Co*., 826 F.2d 581, 589 (7th Cir. 1987).

23

24     Choi, individually and on behalf of ApuroFX and JCI, knew that he was

25 making misrepresentations to existing and prospective clients when he touted his

26 trading experience and promised annual returns of 20%-50%.  In reality, Choi knew

27

28 or acted with careless disregard of the fact that forex trading is risky, with no

guaranteed returns, and that Defendants were misappropriating existing clients' funds.  As the holder of the bank accounts used to collect funds from clients and the sole known U.S. forex trading account opened in the Relevant Period, Choi had personal knowledge of the amount of funds accepted from clients, the disposition of those funds, as well as the complete absence of any trading in his personal trading account.  Finally, Choi knew or acted in reckless disregard of the facts when he represented to clients and prospective clients that ApuroFX was registered with the CFTC and failed to disclose that neither Apuro, nor JCI, nor Choi was registered with the CFTC as required.

### iii.    Choi, Apuro, and JCI Committed Fraud by Misappropriating Clients' Funds

Misappropriation of customer funds constitutes fraud in violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2012).  *See CFTC v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012) (finding that "[s]oliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation" and granting summary judgment to CFTC on claims that commodity pool operator's misappropriation of customer funds violated 7 U.S.C. §§ 6b and 6*o*); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003) ("Defendant's misappropriation of funds entrusted to him for trading purposes is 'willful and blatant fraudulent activity' that clearly violates Section 4b(a) of the Act [7 U.S.C. § 6b(a)].") (quoting *CFTC v. Noble Wealth*, 90 F. Supp. 2d at 687)).

Defendants misappropriated clients' funds in violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2012) by:  (1) using clients' funds to pay the personal expenses of Choi; (2) depositing clients' funds into bank and trading accounts in the names of Defendants; and (3) diverting clients' principal deposits to pay purported trading "profits" or withdrawals of principal to earlier-in-time clients, in the manner of a "Ponzi" scheme.

### iv.    Choi is Liable as a Controlling Person

7 U.S.C. § 13c(b) (2012) provides in relevant part that an individual who possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of an entity may be liable as a controlling person of that entity, provided that the individual either knowingly induces, directly or indirectly, the violative acts, or fails to act in good faith.  To establish controlling person liability under 7 U.S.C. § 13c(b) (2012), the CFTC must show control and lack of good faith. *CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d 482, 504-505 (S.D.N.Y. 2004) (quoting *CFTC v. Baragosh*, 278 F.3d 319, 330-31 (4th Cir. 2002)).  The statute is to be "construed liberally," and even "indirect means of discipline or influence, short of actual direction," is sufficient to find liability as a controlling person. *Monieson v. CFTC*, 996 F.2d 852, 859 (7th Cir. 1993) (quoting *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (1992)).  Proof of recklessness will demonstrate that the controlling person acted in bad faith. *Id*. at 860.  To establish "knowing inducement," the CFTC must show that "the controlling person had actual or constructive

- 14 -

knowledge of the core activities that constitute the violation at issue and allowed

them to continue." *In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *7 (Jan. 12,

1988).

Here, Choi is liable as a controlling person.  First, Choi had control over Apuro

and JCI.  Choi created both entities and controlled the content on the Apuro and JCI

websites.  (Compl. ¶¶ 16, 24, 28; Malas Decl. ¶¶ 5a, 5b, 5e, 12, 13, 17a, 17d).  In

addition, Choi directly controlled the bank accounts to which he directed clients to

send money for the purported purpose of trading off-exchange leveraged forex

contracts.  (Compl. ¶ 32; Malas Decl. ¶¶ 5g, 23, 25, 27, 29, 31, 33-35).  Further, Choi

is responsible for developing and disseminating the false and misleading information

about his trading experience, as well as Apuro and JCI's services, to clients through

Apuro and JCI's solicitation materials.  (Compl. ¶¶ 16, 23-24, 28; Malas Decl. ¶¶ 5e,

11, 15, 17-18).  Choi knowingly induced, directly or indirectly, the conduct

constituting the violations set forth in the Complaint, or failed to act in good faith.  In

fact, Choi was personally involved in the fraudulent acts alleged in the Complaint.

Accordingly, Choi is liable for Apuro and JCI's violations of the Act and Regulations

to the same extent as Apuro and JCI themselves.

                **v.   Apuro and JCI are Liable for the Acts of its Agent Choi**

7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2018) provide that the "act,

omission, or failure of any official, agent, or other person acting for any . . .

corporation . . . within the scope of his employment or office, shall be deemed the act,

omission, or failure of such . . . corporation . . . , as well as such official, agent, or other person."  Pursuant to these provisions, "it does not matter if the principal participated in or even knew about the agent's acts; he is strictly liable for them." *Stotler & Co. v. CFTC*, 855 F.2d 1288, 1292 (7th Cir. 1988); *see also Guttman v. CFTC*, 197 F.3d 33, 39-40 (2d Cir. 1999).  Additionally, that an agent's actions are illegal does not automatically place those acts outside of his scope of employment. *See*, *e.g.*, *Guttman*, 197 F.3d at 39-40 (upholding CFTC's finding of principal-agent liability under U.S.C. § 2(a)(1)(B) (2012), where agent engaged in trading that was both within scope of employment and illegal); *CFTC v. Byrnes*, 58 F. Supp. 3d 319, 326 (S.D.N.Y. 2014) (company may be liable under 7 U.S.C. § 2(a)(1)(B) (2012) for agents' violations within scope of employment, including any acts intended to serve any purpose of the employer).

Choi committed the fraudulent acts described above and in the Complaint as an agent of Apuro and JCI.  In fact, Apuro and JCI's operations are co-extensive with Choi's conduct.  Choi fraudulently solicited clients on behalf of Apuro and JCI. (Compl. ¶¶ 24-25; Malas Decl. ¶ 5d).  Because the fraudulent acts Choi committed occurred within the course and scope of his work for Apuro and JCI, the companies are liable for his illegal conduct under U.S.C. § 2(a)(1)(B) (2012).

### b.  Apuro and JCI Committed Fraud as Commodity Trading Advisors (Complaint Count II)

7 U.S.C. § 6*o*(1)(A) and (B) (2012) make it unlawful for CTAs and their APs, by use the mails or any other means of interstate commerce, directly or indirectly, to:

- 16 -

(A) employ any device, scheme, or artifice to defraud any client; or (B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any client.  "Section 4*o*(1) of the Act [7 U.S.C. § 6*o*] broadly prohibits fraudulent conduct by a [CTA]" and "applies to all [CTAs] whether registered, required to be registered, or exempted from registration."  *CFTC v. Weinberg*, 287 F. Supp. 2d at 1107-1108 (citing *CFTC ex rel. Kelley v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985)); *see also CFTC v. Vartuli*, 228 F.3d 94, 103 (2d Cir. 2000) (unregistered CTA liable under 7 U.S.C. § 6*o*).  7 U.S.C. § 6*o* (2012) applies to forex CTAs pursuant to 7 U.S.C. § 2(c)(2)(C)(ii), (vii) (2012).

The same fraudulent conduct that violates 7 U.S.C. § 6b(a)(2) (2012) also violates 7 U.S.C. § 6*o*(1) (2012).  *See CFTC v. Aurifex Comm. Research Co.*, No. 1:06–CV–166, 2008 WL 299002, at *6 (W.D. Mich. Feb. 1, 2008); *see also Skorupskas*, 605 F. Supp. at 932.  Accordingly, the elements of proof regarding the conduct of Defendants described above in violation of 7 U.S.C. § 6b(a)(2) (2012) also demonstrate a violation of 7 U.S.C. § 6*o*(1)(A) and (B) (2012).[8]

During the Relevant Period, Apuro and JCI acted as CTAs by using

_____

[8] The CFTC's burden of proof concerning fraud under 7 U.S.C. § 6*o*(1)(B) of the Act is less than its burden under 7 U.S.C. § 6b(a) (and 7 U.S.C. § 6*o*(1)(A)) because, unlike 7 U.S.C. §§ 6b(a) and 6*o*(1)(A), the CFTC is not required to prove scienter to establish a violation of 7 U.S.C. § 6*o*(1)(B).  *See, e.g.*, *CFTC v. Savage*, 611 F.2d 270, 285 (9th Cir. 1979) (intent to defraud not required under 7 U.S.C. § 6*o*(1)(B) of the Act); *SEC v. Princeton Econ. Int'l*, 1999 WL 997149, at *4 (S.D.N.Y. Nov. 3, 1999) (explaining in joint SEC and CFTC action that "Section 4*o*(1) . . . [of the Act] does not expressly require scienter as a prerequisite for liability").

instrumentalities of interstate commerce (including email and the Internet) to exercise discretionary trading authority or obtain written authorization to exercise discretionary trading authority over any account for or on behalf of any non-eligible contract participant ("ECP")[9] in connection with forex contracts.  (Compl. ¶¶ 7, 30, 42, 56, 63; Malas Decl. ¶¶ 17-18; Malas Decl. Ex. 12 (Apuro Investment Management Agreements signed by clients, ECF # 9-20)).  In so doing, Apuro and JCI violated 7 U.S.C. § 6*o*(1)(A) and (B) (2012).

### c. Apuro and JCI Failed To Register with the CFTC as Commodity Trading Advisors (Complaint Count III)

7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2012) prohibits any person from exercising discretionary trading authority or obtaining written authorization to exercise written trading authority over any account for or on behalf of any non-ECP in connection with off-exchange forex transactions, unless registered with the CFTC, with certain exceptions not applicable here.  7 U.S.C. § 6m(1) (2012) prohibits a CTA, unless registered as such with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CTA.  Similarly, 17 C.F.R. § 5.3(a)(3)(i) (2018) requires any forex CTA, as defined in 17 C.F.R. § 5.1(e)(1) (2018), to register with the CFTC.  17 C.F.R. § 5.1(e)(1) (2018)

---

[9] An ECP is defined in 7 U.S.C. § 1a(18) (xi) (2012) as "an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of – (I) $10,000,000; or (II) $5,000,000 and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."

defines a CTA as any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of a non-ECP as defined in 7 U.S.C. § 1a(18) (2012), in connection with retail forex transactions.

Apuro and JCI violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2012) by, without being registered with the CFTC, obtaining written authorization to exercise discretionary trading authority over clients' forex accounts.  (Malas Decl. ¶ 7; Malas Decl. Ex. 1 (NFA certified records, ECF # 9-4)).  All, or nearly all, of Defendants' clients are non-ECPs.  (Compl. ¶ 30).  Apuro and JCI violated 7 U.S.C. § 6m(1) (2012) by, without being registered with the CFTC, using the mails and other means or instrumentalities of interstate commerce (including email and the Internet), in connection with their business as a CTA.  (Compl. ¶¶ 25-28, 42, 44; Malas Decl. ¶¶ 5f, 7, 15b; Malas Decl. Ex. 1).

### d. Choi Failed To Register with the CFTC as an Associated Person of a Commodity Trading Advisor (Complaint Count IV)

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) prohibits any person from soliciting or accepting orders from any non-ECP in connection with off-exchange forex transactions, unless registered with the CFTC, subject to certain exceptions not applicable here.

7 U.S.C. § 6k(3) (2012) requires any person associated with a CTA as a partner, officer, employee, consultant, or agent, in any capacity which involves (i) the

solicitation of a client's or prospective client's discretionary account, or (ii) the

supervision of any person or persons so engaged, to register with the CFTC.

Similarly, 17 C.F.R. § 5.3(a)(3)(ii) (2018) prohibits any person from acting as an AP

of a CTA, as defined in 17 C.F.R. § 5.1(e)(2) (2018), unless the person is registered

with the CFTC as such.  17 C.F.R. § 5.1(e)(2) (2018) defines an AP of a CTA as any

person associated with a CTA as a partner, officer, employee, consultant or agent, in

any capacity which involves (i) the solicitation of a client's or prospective client's

discretionary account; or (ii) the supervision of any person or persons so engaged.

    Choi violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) by, without being

registered with the CFTC, soliciting or accepting orders from non-ECPs in

connection with off-exchange forex transactions.  (Compl. ¶¶ 30, 43).  All, or nearly

all, of Defendants' clients are non-ECPs.  (Compl. ¶ 30).  Choi violated 7 U.S.C.

§ 6k(3) (2012) by being associated with CTAs Apuro and JCI as an employee or

agent, in a capacity which involves the solicitation of a client's or prospective client's

discretionary account without being registered with the CFTC.  (Compl. ¶ 43).  Choi

violated 17 C.F.R. § 5.3(a)(3)(ii) (2018) by being associated with CTAs Apuro and

JCI as an employee or agent, in a capacity which involves the solicitation of a client's

or prospective client's discretionary account, without being registered with the CFTC.

(Compl. ¶ 43; Malas Decl. ¶¶ 5a-5b; Malas Decl. Ex. 1).

### 2.  The Remaining *Eitel* Factors Support Entry of Default Judgment (*Eitel* Factors 3-7)

#### a.  There is Minimal Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the Clerk of the Court entered default against the Defendants.  No dispute has been raised regarding the material facts in the complaint, and the likelihood that any genuine issue may exist is, at best, remote.  *See Sky Billiards, Inc.*, 2016 WL 6661175, at *5 (defendants' failure to respond "supports the conclusion that the possibility of a dispute as to the material facts is minimal").

#### b.  There is No Evidence that Default Was Due to Excusable Neglect

Defendants' failure to respond to the Complaint is not the result of "excusable neglect."  The CFTC has diligently prosecuted this case since its inception, while Defendants have failed to answer, plead or defend in this action.  Defendants were properly served with the Summons, the Complaint, and all associated papers by a process server on May 24, 2018 (*see* Proofs of Service executed by Nicole Lopez, dated May 28, 2018, ECF # 16-18).  Defendants' answers to the Complaint were due on June 14, 2018.  (ECF # 16-18).  The Clerk entered default against all Defendants on June 18, 2018.  (ECF # 21).  In light of these facts, there is nothing to indicate that

Defendants' failure to plead or respond to the Complaint is due to excusable neglect. *See Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-02025, 2014 WL 12601015, at *2 (C.D. Cal. July 17, 2014) ("Defendant was served with the summons and Complaint, but has failed to appear in this action.  Therefore, there is no indication that Defendant's default is due to excusable neglect, or that the material facts are in dispute.").

### c.   The CFTC Will Suffer Prejudice if Default Judgment is Not Entered

The CFTC will suffer prejudice if default judgment is not entered because it "will be deprived of the opportunity to obtain judicial resolution of its claim[s]."  *Sky Billiards*, 2016 WL 6661175, at *5; *see also Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding plaintiff would suffer prejudice absent entry of default judgment because of defendant's "unwillingness to cooperate and defend" against claim).  Choi fled the United States on or about June 11, 2018 — after the CFTC filed its Complaint on May 14, 2018 and shortly before the scheduled June 29, 2018 court hearing on the CFTC's motion for preliminary injunction — in an apparent effort to avoid prosecution for his fraudulent conduct.  (Karst Decl. ¶ 8; Karst Decl. Ex. 2).  In these circumstances, denying the CFTC's motion for default judgment would effectively deny defrauded clients the opportunity to be made whole by an order of restitution.  *See Abu-Assal v. Abu-Assal*, No. EDCV 01-0153 GAF, 2010 WL 11508162, at *2 (C.D. Cal. Feb. 8, 2010) (granting default judgment in fraud and civil RICO case where defendant had earlier fled country "to evade

- 22 -

obligations imposed by the state family law court" and finding plaintiff would suffer "significant prejudice" if court denied motion).  Further, failure to enter default judgment would frustrate the important policy goal of protecting the integrity of the commodity futures markets.  *See Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (describing CFTC as "'the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in the commodity futures markets'") (citing *Lawrence v. CFTC*, 759 F.2d 767, 776 (9th Cir. 1985)); *SEC v. Fortitude Group., Inc.*, C.A. No. 16-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied).

### d.  Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment

Although the Federal Rules and public policy favor a decision on the merits, "[d]efendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Choi's fleeing the United States makes it particularly unlikely that this case can be decided on the merits.  *See Garcia v. Fidelity Mortgage Company*, No. C 05-05144 MHP, 2009 WL 1246921, at *4 (N.D. Cal. May 5, 2009) (granting default judgment against defendant who fled the jurisdiction because his "absence throughout these proceedings makes it unlikely that the case against him can be decided on its merits").  Accordingly, because the CFTC

- 23 -

has sufficiently pleaded facts supporting its claims, the policy favoring decisions of cases on their merits does not warrant denying default judgment in this instance.

### e.  Sum of Money at Stake

Finally, the Court considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (C.D. Cal. 2002).  Here, the amount of money at stake does not warrant denying default judgment.  Defendants' fraudulent conduct and registration violations constitute core violations of the Act and Regulations that attack the integrity of the commodity markets.  The relief Plaintiff seeks is reasonable, is authorized by the Act and Regulations, and is consistent with prior default judgment awards in similar CFTC actions.  *See e.g.*, *CFTC v. Am. Bullion Exch. ABEX Corp.*, No. SACV10–1876, 2014 WL 12603558, at *11 (C.D. Cal. Sept. 16, 2014) (entering default judgment for CFTC and ordering defendants to pay a civil monetary penalty exceeding $14 million); *CFTC v. Safevest, LLC*, No. SACV08–00474, 2009 WL 2448116, at *4-5 (C.D. Cal. July 13, 2006) (after defendants' default, Court ordered $18.4 million in disgorgement and $2 million in civil monetary penalties); *cf. CFTC v. Schiera*, No. CV05 2660 CAS, 2006 WL 4586786, at *7, *9 (S.D. Cal. Dec. 11, 2006) (entering default judgment and ordering defendants to disgorge $3 million and pay a $9 million civil monetary penalty).

**D.      Remedies and Damages**

**1.  Permanent Injunction**

The CFTC additionally seeks permanent injunctive relief against Defendants under 7 U.S.C. § 13a-1(a) (2012), to prohibit future violations of the Act and Regulations.  Pursuant to 7 U.S.C. § 13a-1(a) (2012), "[t]he CFTC is entitled to a permanent injunction upon a showing that a violation [of the Act or Regulations] has occurred and is likely to continue unless enjoined."  *Driver*, 877 F. Supp. 2d at 981 (citations omitted).  As a result, "[o]nce a violation of the Act has been shown, the moving party need only show the existence of some reasonable likelihood of future violations."  *CFTC v. Co Petro Mktg. Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980).

The Court may infer a likelihood of future violations of the Act and Regulations from past unlawful conduct.  *See Driver*, 877 F. Supp. 2d at 981 ("In drawing such an inference from past violations, 'the Court should look at the totality of the circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant.'") (quoting *Co Petro Mktg. Grp., Inc.*, 502 F. Supp. at 818).  In deciding whether to issue a permanent injunction, the Court may also consider "the egregiousness of the defendant's actions, whether the violation was isolated or recurrent, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of

- 25 -

his conduct's wrongfulness, and the likelihood that the defendant's occupation will present opportunities for future violations." *Driver*, 877 F. Supp. 2d at 981-82.

As alleged in the Complaint and described above, Defendants' conduct was neither isolated nor accidental.  Defendants engaged in egregious and systematic violations of the Act and Regulations by fraudulently soliciting and misappropriating at least $1,155,572 from fourteen clients over a four-year period.  (Compl. ¶¶ 1, 23, 39-40; Malas Decl. ¶¶ 5d-5e, 5j, 45; Malas Decl. II ¶¶ 7-8, 10-11).  Rather than admitting their wrongdoing, Defendants took pains to conceal his fraud, including by falsely assuring clients that they "should not worry" and making "Ponzi" scheme-like payments to certain clients.  (Compl. ¶¶ 5, 40; Malas Decl. ¶ 45; Malas Decl. Ex. 11 (Client Decls., ECF # 9-19); Malas Decl. II ¶¶ 7, 11; Malas Decl. II Ex. 1-5 (Client Decls., submitted herewith)).  Given this history, the only conclusion is that Defendants, through Choi, will continue their pattern of wrongdoing unless permanently enjoined by the Court.

## 2.  Restitution, Civil Monetary Penalty, and Post-Judgment Interest

Although the Court must make a determination regarding the damages requested in a motion for default judgment, the Court is "not required to conduct an evidentiary hearing to ascertain damages" where evidence of damages has been provided.  *Garden City Boxing Club, Inc. v. Aranda*, 384 F. App'x 688, 689 (9th Cir. 2010).  The Court may rely on declarations in lieu of a damages hearing.  *See, e.g.*, *CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL

1130588, at \*13 (C.D. Cal. Apr. 19, 2005) (finding "no reason to hold an evidentiary hearing on damages" because CFTC-submitted documentary evidence was "sufficient" to enter default judgment).

### a. Restitution

7 U.S.C. § 13a-1(d)(3)(A) (2012) authorizes the CFTC to seek, and the Court to impose, equitable remedies for violations of the Act, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)."[10]  Restitution exists to "restore the status quo" and reflects "the difference between what defendants obtained and the amount customers received back." *Driver*, 877 F. Supp. 2d at 981 (entering default judgment and ordering restitution equal to the amount of money solicited minus the amount returned to customers). *See also CFTC v. Leighton*, No. 2:12-cv-04012, 2013 WL 4101874, at \*9 (C.D. Cal. July 8, 2013) (ordering restitution equal to the "net losses to pool participants"); *Emerald Worldwide*, 2005 WL 1130588, at \*10 ("The appropriate amount of restitution is the total amount invested by customers, less refunds made by the defendants to the customers.").

Defendants' illegal conduct, as detailed herein, proximately caused clients to incur net losses totaling $1,131,572, which reflects the total funds Defendants fraudulently solicited ($1,155,572), minus the funds they diverted from some clients

---

[10] 7 U.S.C. § 13a-1(d)(3)(B) (2012) allows the CFTC to seek "disgorgement of gains received in connection with" a violation of the Act or Regulations.  However, as any disgorgement ordered in this action would be duplicative of the restitution Plaintiff seeks, Plaintiff declines to seek disgorgement by this Motion.

and passed to other clients in the manner of a "Ponzi" scheme ($24,000).  *See* Compl.

¶¶ 5, 40; Malas Decl. ¶¶ 6-7; Malas Decl. II ¶¶ 7-8, 11).  Accordingly, Defendants

should be ordered to pay restitution of $1,131,572 on a joint and several basis, which

reflects clients' net losses ($1,155,572 – $24,000 = $1,131,572), plus post-judgment

interest thereon.  *See id*.

### b.  Civil Monetary Penalty

7 U.S.C. § 13a-1(d)(1) (2012) and 17 C.F.R. § 143.8(a)(4)(iii)(B) (2018)

authorize the CFTC to seek a civil monetary penalty ("CMP") equal to the higher of

triple Defendants' monetary gain from each violation of the Act or Regulations, or

$170,472 per violation.  The Court may "fashion a civil monetary penalty appropriate

to the gravity of the offense and sufficient to act as a deterrent."  *CFTC v. Trimble*,

No. 11-cv-02887, 2013 WL 317576, at *9 (D. Colo. Jan. 28, 2013) (citing *Miller v.

CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)).  In determining civil monetary

penalties, courts consider the nature of the violation of the Act or Regulations,

whether scienter was present, the consequences of the violation, the financial benefit

to defendants, and the harm to customers.  *See CFTC v. Am. Bullion Exch. ABEX

Corp*., No. SACV 10–01876, 2014 WL 3896023, at *18 (C.D. Cal. Aug. 7, 2014)

(citing *CFTC v. Arrington,* 998 F. Supp. 2d 847, 875 (D. Neb. 2014)).  This District

has determined that "a high civil monetary penalty is warranted where customers

have been defrauded of a substantial amount of money."  *Driver*, 877 F. Supp. 2d at

982.

Acting intentionally, Defendants fraudulently solicited and misappropriated at least $1,155,572 over a more than a four-year period and then attempted to conceal their fraud by falsely representing that clients "should not worry" and by tendering "Ponzi" scheme-like payments to certain clients.  (Compl. ¶¶ 1, 5, 23, 40; Malas Decl. ¶ 45; Malas Decl. Ex. 11; Malas Decl. II ¶¶ 7-8, 11; Malas Decl. II Ex. 1-5). As a result of Defendants' illegal conduct, clients incurred significant losses as Defendants enriched themselves.  Significant civil monetary penalties are appropriate in these circumstances.  *See JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (imposing large civil monetary penalties because "the violations of the Act . . . were 'knowingly and repeatedly' committed," and "directly harmed" customers).

Given Defendants' intentional and egregious conduct, including by falsely representing that Apuro was a FCM registered with the CFTC and a member of the National Futures Association, Plaintiff requests a CMP of $1,131,572 on a joint and several basis, which is equal to one time the monetary gain of Defendants ($1,155,572 total funds solicited – $24,000 "Ponzi" scheme-like payments = $1,131,572).  (Compl. ¶¶ 5, 26, 35d, 40; Malas Decl. ¶¶ 5d, 5j, 45; Malas Decl. II ¶¶ 7-8, 11).  *See, e.g.*, *Slusser v. CFTC*, 210 F.3d 783, 787 (7th Cir. 2000) ("[T]he penalty . . . is limited by the number of violations alleged in the complaint times the maximum fine per violation.").  The record would support a higher CMP of triple the gain Defendants reaped from their fraud, for example ($1,155,572 total funds solicited – $24,000 "Ponzi" scheme-like payments = $1,131,572 (x 3) = $3,394,716).

*See* 7 U.S.C. § 13a-1(d)(1) (2012) and 17 C.F.R. § 143.8(a)(4)(iii)(B) (2016); *see also*
*Emerald Worldwide*, 2005 WL 1130588, at *13 (imposing civil monetary penalty of
triple defendant's gain); *Weber*, No. CV10–0534–PHX–DGC, 2010 WL 5108688, at
*4 (D. Ariz. Dec. 9, 2010) ("[T]he court shall have jurisdiction to impose . . . a civil
penalty in the amount of . . . triple the monetary gain to the person for each
violation.") (quoting 7 U.S.C. § 13a-1(d)(1)); *CFTC v. Premium Income Corp.*, No.
Civ. A. 3:05CV0416B, 2007 WL 429092, at *14 (N.D. Tex. Jan. 26, 2007) (imposing
civil monetary penalty of "triple the monetary gain as measured by triple the amount
of customer funds received by [defendants], less the funds returned to customers").
However, for the reasons stated above and taking into account all relevant factors, the
CFTC instead moves this Court to impose a CMP of $1,131,572.

### c.  Post-Judgment Interest

The CFTC is entitled to post-judgment interest on any restitution and civil
monetary penalty awards ordered by this Court, which accrues at the weekly average
1-year constant maturity Treasury yield for the calendar week preceding the date of
judgment.  28 U.S.C. § 1961(a) (2012).

### IV.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion, enter final
judgment by default against Defendants, and issue a final order in the form of the
proposed Order submitted herewith.

Dated:  July 20, 2018

Respectfully submitted,

COMMODITY FUTURES
TRADING COMMISSION

/s/ Danielle Karst
JAMES H. HOLL, III. CA Bar. No. 177885
TIMOTHY J. MULREANY, *pro hac vice*
DANIELLE KARST, *pro hac vice*
Attorneys for Plaintiff
COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000
jholl@cftc.gov
tmulreany@cftc.gov
dkarst@cftc.gov